UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 0:17-cv-61799-GAYLES/Seltzer**

HOLLYWOOD PARK APARTMENTS
SOUTH, LLC,

    Plaintiff,

v.

CHUBB CUSTOM INSURANCE
COMPANY,

    Defendant.
_____/

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY ON COUNTS I & II AND ON DEFENDANT'S AFFIRMATIVE DEFENSES & INCORPORATED MEMORANDUM OF LAW**

    Pursuant to F.R.C.P. 56, Plaintiff, Hollywood Park Apts South, LLC ("Hollywood Park") moves for partial summary judgment as to liability on Counts I & II, and upon Defendant, Chubb Custom Insurance Company's ("Chubb" or the "Insurance Company") Affirmative Defenses based upon the following:

**Introduction**

    1.  While the parties have no dispute that the floor joists in between the floors of the apartment complex were caused by termites and water, the Parties disagree on whether the occurrence at the Plaintiff's property constitutes a "collapse" under the Insurance Policy.[1] Thus, it is proper for the Court, to interpret the policy as a matter of law, and determine whether the occurrence at the Plaintiff's property in fact constitutes a "collapse" under the policy or whether

the policy coverage is ambiguous (thereby allowing coverage). Dahl-Eimers v. Mut. of Omaha Life Ins. Co., 986 F.2d 1379, 1381 (11th Cir. 1993)("Under Florida law, interpretation of an insurance contract, including determination and resolution of ambiguity, is a matter of law.") citing Sproles v. American States Ins. Co., 578 So.2d 482, 484 (Fla. 5th DCA 1991) and Gulf Tampa Drydock Co. v. Great Atl. Ins. Co., 757 F.2d 1172, 1174 (11th Cir.1985).

**Facts**

2. It is undisputed that Hollywood Park was insured by Chubb Custom Insurance Company, Policy No. 99774236-05 for the policy period September 6, 2014 - September 6, 2015. [D.E. 1-1].

3. On or about April 24, 2015, during routine maintenance on the Plaintiff's building, the Plaintiff's onsite maintenance employee was walking inside unit 17, which is a second-floor unit, when his leg fell through the floor and his foot landed on the ceiling of the first-floor apartment below. [D.E. 1-1 at Pg. 12, ¶6].

4. Between June 2015, and January 2016, the Insurance Company was notified and investigated the Plaintiff's loss. Chubb sent a Florida Professional Engineer to evaluate the cause of the damage on two occasions and was provided access to the property. [D.E. 4, 4-1, 4-2].

5. The horizontal floor joists which are in-between the floor of the top floor units and the ceiling of the bottom floor units were heavily damaged by subterranean termites. In addition, to the termite damage, the floor joists and plumbing framing including Unit 17 and Unit 4 had suffered water damage that contributed to the failure of the joists and wood elements. [D.E. 4-1, 4-2].

6. On or about November 25, 2015, Chubb denied the claim. [D.E. 4-1]. Chubb's denial

letter stated:

> It is the position of Chubb Custom Insurance Company that there was no abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose. **We recognize that repairs due to the termite infestation will require repairs**, **but we did not identify any coverage trigger under the additional coverage for collapse.** The damages sustained to the insured's property are due to ongoing plumbing leaks from the showers, tubs, and/or drains within the apartment units. **It is our position the leaks identified have occurred over a continuous period exceeding 14 days. The repeated water seepage led to the attraction and damage of termite infestation**. These damages are specifically excluded as outlined within the policy.

(Emphasis added). Id.

7. On January 8, 2016, Chubb sent a second denial letter after a second visit to the property. [D.E. 4-2]. The denial letter again acknowledged that there was termite damage that required repairs, including tenant relocation, but denied that a "collapse" in fact occurred:

> **We recognize that the damages sustained due to the termite infestation will require repairs and the premises may need to be vacated during repairs**, **however, we did not identify any coverage trigger under the additional coverage for collapse**. The damages sustained to the insured's property are due to ongoing plumbing leaks from the showers, tubs, and/or drains within the apartment units.

(Emphasis added) Id.

## Argument

8. The policy specifically insures for "collapse" under certain conditions, the very same conditions as found in this matter before the Honorable Court.

9. "Florida law provides that insuring clauses are construed liberally to effect the most

coverage possible, while exclusionary language is strictly construed." Paul Revere Life Ins. Co. v. McPhee, 144 F. Supp. 2d 1375, 1381 (S.D. Fla. 2001). Westmoreland v. Lumbermens Mut. Cas. Co., 704 So.2d 176, 179 (Fla. 4th DCA 1997)

10. In Florida, an insurance policy is considered a contract and ordinary contract principles therefore dictate or otherwise govern the policy's interpretation and construction. Graber v. Clarendon Nat'l Ins. Co., 819 So.2d 840, 842 (Fla. 4th DCA 2002). If policy language is susceptible to multiple, reasonable interpretations, the policy is considered ambiguous and therefore must be "interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy." S.-Owners Ins. Co. v. Easdon Rhodes & Associates LLC, 872 F.3d 1161, 1164 (11th Cir. 2017) (citing Auto–Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla. 2000)).

### How A Collapse is Defined Under the Policy

11. It is undisputed that the policy at issue covers collapse (with certain caveats). [D.E. 1-1 at Pg. 59, ¶(k); D.E. 4]. The peril of "collapse" is provided for in the policy specifically in two places [D.E. 1-1] and is presented in both the Exclusions section (as an exception to an exclusion) and as an Additional Coverage as follows:

    a. The policy initially declares it will pay for "covered causes of loss" listed in the Declarations[2];

    b. "Covered causes of loss" are listed as "Special" in the Declarations for the address of the property at issue.

    c. The "Cause of Loss - Special Form" states that the policy covers "Risks of

---

[2] "We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." Insurance Policy, Building and Personal Property Coverage Form pg. 1 of 15.

Direct Physical Loss unless the loss is: 1. Excluded in Section B., Exclusions; or 2. Limited in Section C., Limitations;" Thus, the policy is considered under Florida law an "all-risk" policy.[3]

    d.   In "Section B - Exclusions /(k.) Collapse" is excluded under the policy, except under certain conditions, or as provided for in "Section D – Additional Coverages - Collapse":

> **B. Exclusions**
> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
> \*\*\*\*
>
> **k. Collapse,** including any of the following conditions of property or any part of the property:
>
> (1) An abrupt falling down or caving in;
> (2) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or
> (3) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to (1) or (2) above.
>
> But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.
>
> **This exclusion, k., does not apply**
> **(a) To the extent that coverage is**
> **provided under the Additional**

---

[3] "In broad terms, all-risk insurance policies cover all "fortuitous" losses, "unless the policy contains a specific provision expressly excluding the loss from coverage." Great Lakes Reinsurance (UK) PLC v. Kan-Do, Inc., 639 Fed. Appx. 599, 601 (11th Cir. 2016) quoting Dow Chem. Co. v. Royal Indem. Co., 635 F.2d 379, 386 (5th Cir. Jan. 26, 1981)

**Coverage —Collapse; or**

(b) To collapse caused by one or more of the following:
**(i) The "specified causes of loss"**[4] **[INCLUDES WATER DAMAGE FROM A PLUMBING SYSTEM];**
(ii) Breakage of building glass;
(iii) Weight of rain that collects on a roof; or
(iv) **Weight of people or personal property.**

\*   \*   \*   \*

**D. Additional Coverage —Collapse**

The coverage provided under this Additional Coverage —Collapse applies only to an abrupt collapse as described and limited in D.1. through D.7.

1. For the purpose of this Additional Coverage —Collapse, abrupt collapse means an abrupt **falling down or caving in of** a building or **any part of a building** with the result that the building or part of the building cannot be occupied for its intended purpose.

2. **We will pay** for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, **if such collapse is caused by one or more of the following:**

a. **Building decay that is hidden from view,**

---

[4] Water damage from a plumbing system is included as one of the specific causes listed under the Definition section for the definition for "specified causes of loss" [D.E. 1-1].

Page 6 of   15

> **unless the presence of such decay is known to an insured prior to collapse**;
>
> b. **Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse**;
>
> \* \* \* \*
>
> 3. This Additional Coverage - Collapse does not apply to:
> a. A building or any part of a building that is in danger of falling down or caving in;
> b. A part of a building that is standing, even if it has separated from another part of the building; or
> c. A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

[D.E. 1-1 beginning at Pg. 26]. Insurance Policy, Causes of Loss Special Form page 4 of 10; 7 of 10 (Emphasis added).

### Interpreting Coverage in All Risk Policies

12. A factor weighing in the insured's favor is the liberal construction generally given all-risk insurance contracts. The term all-risk is given a broad and comprehensive meaning. Phoenix Ins. Co. v. Branch, 234 So.2d 396, 398 (Fla. 4th DCA 1970). An all-risk policy provides "a special type of coverage extending to risks not usually covered under other insurance" and coverage is available for all loss not resulting from the insured's willful misconduct or fraud unless the policy contains "a specific provision expressly excluding the loss from coverage." Id.

13. In short, in all-risk policies, "construction is governed by the language of the exclusionary provisions." Sebo v. Am. Home Assurance Co., Inc., 208 So. 3d 694, 697 (Fla.

2016).

### A Person Falling Through the Second Floor to the First Floor is a Collapse

14. In the instant case, the leg of the Plaintiff's maintenance person fell through the second floor and onto the first floor. Because this collapse occurred due to the "weight of people," such an event would be covered under either one of the provided "collapse" coverage provisions based on the plain language of the policy which covers a "caving in" caused by the "weight of people".[5]

### The Fallen Horizontal Joists Which Require Repair Are a Collapse

15. In addition, under the specific terms of the policy at issue, the cost to repair the horizontal joists and framing that have failed and/or fallen,[6] whether the fall was caused by termites, water damage, decay, or a combination thereof, are covered under the Collapse provision of the policy because the damages were hidden between the floors and the joists fell.[7] Under the plain language of the policy, if **any** part of the building abruptly "fall[s] down or caves in" as a result of "insect damage" OR "decay" OR "a covered cause of loss" (which includes water damage from a plumbing system) then the loss is covered.[8]

---

[5] The cost to repair would be a question for the fact finder.

[6] The Insurance Company admits in its denial letters [D.E. 4-1; 4-2] that the damages require the property to be vacated. In addition, the policy "is not written in terms of how far a part of a building must fall down or to what degree a part of a building must cave in to constitute 'collapse.'" Kings Ridge Cmty. Ass'n, Inc. v. Sagamore Ins. Co., 98 So. 3d 74, 78 (Fla. 5th DCA 2012)

[7] The cost to repair same, would be a question for the fact finder.

[8] Notably, a collapse under this policy does not require the loss of structural integrity because "collapse" is defined specifically without the this more stringent structural requirement. [D.E. 1-1].

16. The policy does not exclude from the collapse provision the wooden joists between the floors, or any other parts of the building in-between the walls. If the Insurance Company wanted to exclude these items, it could have, as it has a number of items listed that are excluded from the collapse coverage provisions (i.e. yard fixtures, fences, piers, awnings, etc.) [D.E. 1-1].

**"Section B Exclusions" Do Not Apply to "Section D - Additional Coverages Collapse"**

17. The Insurance Company claims the loss is excluded because under **Section B - Exclusions** both "insect infestation" and "continuous or repeated seepage of water" are excluded.[9] However the plain language of "Section D - Additional Coverages -Collapse" a collapse caused by "insects" OR "decay" are covered:

> We will pay . . . if such collapse is caused by one or more of the following:
>
> a. **Building decay** that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;
>
> b. **Insect or vermin damage** that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

18. Even if the Court found that water "seepage or leakage" was not "decay" and/or the exclusion applied despite the exception to the exclusion listing "water damage from a plumbing system", a combination of covered and excluded loss would not prohibit coverage. Sebo v. Am. Home Assurance Co., Inc., 208 So. 3d 694, 696 (Fla. 2016), reh'g denied, SC14-897, 2017 WL 361132 (Fla. Jan. 25, 2017) (Holding that when multiple perils combined to create a loss and even if one of the perils is excluded by the terms of the policy the loss is still covered under an all risk policy); See also, Wallach v. Rosenberg, 527 So.2d 1386 (Fla. 3d DCA 1988).

**Collapse Provisions Interpreted Under Florida Law**

19. In <u>Kings Ridge Community Association, Inc. v. Sagamore Insurance Company</u>, 98 So. 3d 74 (Fla. 5th DCA 2012), the Florida Fifth District Court of Appeal held that the "Additional Coverage -- Collapse" provision provided for in the policy was not limited by exclusions found elsewhere in the policy. <u>Kings Ridge</u> was determined on the exact type of affirmative coverage provision at issue here, and a policy provision structure which is identical to the matter at Bar.

20. As in the instant case, the policy in <u>Kings Ridge</u> was an "all-risk" policy that provided "Additional Coverages – Collapse". <u>Id</u>. at 75-76.

21. As in the instant case, the policy in Kings Ridge listed in the "Exclusions" section, a cause of loss ("Collapse") identical to the coverage provided in the "Additional Coverages - Collapse" section of the policy that pin-pointedly provides that the exclusion does not apply to the coverage specifically provided for under the "Additional Coverages" section of the policy.

22. In <u>Kings Ridge</u>, the insured roof and ceiling of the insured property collapsed downwards twelve inches due to numerous causes including many listed in the "Exclusions" section of the policy such as ponding rainwater (excluded), improper field-modifications to the trusses made during construction (excluded), and the replacement of the HVAC unit with a heavier unit (excluded) which "all contributed to the failure of one or several of the eleven consecutive roof trusses, which resulted in the progressive failure of the remaining eleven trusses …." <u>Id.</u> at 77.

23. Nevertheless, Florida's Fifth District held that this constituted a collapse under the policy because the policy specifically provided for coverage under the affirmative coverage of

"Collapse" in the "Additional Coverages" section of the policy when the excluded causes result in a "collapse". Id.

### Same Affirmative Defenses Exist in the Instant Action

24. Like the insurer in Kings Ridge, Chubb seeks to avoid coverage for "Collapse" specifically provided for in the "Section D. Additional Coverages - Collapse" section of the policy by arguing that general policy exclusions in "Section B - Exclusions" apply. However, the Exclusions section of the Plaintiff's policy, **just as the policy in Kings Ridge, specifically denotes that the Additional Coverage Section for collapse are still valid, despite the Exclusion**.

25. However, Kings Ridge established that the general exclusion for long-term water damage can't apply to the "additional" coverage for "Collapse" because under the Exclusions section of the policy it refers to the affirmative "Additional Coverage" section of the policy which lists the only exclusions for losses caused by "Collapse." Thus, none of the general exclusions cited by Chubb presents a valid defense raising questions of fact to be presented to a jury.

26. The Florida 1st DCA in W. Am. Ins. Co. v. Chateau La Mer II Homeowners Ass'n, Inc., 622 So. 2d 1105, 1108 (Fla. 1st DCA 1993) came to the same conclusion about termite damages which result in a collapse (under "Additional Coverage - Collapse") and the losses are not excluded under the terms of the general exclusions, or if a combination of events causes the collapse:

> We agree that the subject policy expressly covers loss due to collapse from hidden decay, or damage by insects. Nowhere in its policy does West exclude coverage for the collapse of a balcony, due to hidden decay and insect damage, where the decay and insect damage is caused by faulty or

>       inadequate design, construction, or maintenance . . . Applying this
>       rationale to the policy at issue herein, one can conclude that collapse due
>       to hidden decay or insect damage is covered and the exclusions for
>       negligent construction, design, or maintenance, apply to damage other than
>       that resulting from collapse due to hidden decay and insects.

W. Am. Ins. Co. v. Chateau La Mer II Homeowners Ass'n, Inc., 622 So. 2d 1105, 1108 (Fla. 1st DCA 1993)

27. In Hartford Accident & Indem. Co. v. Phelps, 294 So.2d 362 (Fla. 1st DCA 1974), as in the present case, there was an affirmative statement of coverage and an exclusion arguably covering the same subject. The policy in Phelps covered "accidental discharge, leakage or overflow of water or steam from within a plumbing, heating, or air-conditioning system...." At the same time, the policy excluded coverage for damage from "water below the surface of the ground...." When the court considered the terminology used in the exclusion clause in para materia with the affirmative statement of coverage from leaks in the plumbing system, the court concluded that the exclusion was intended to relate only to damage from water not emanating from the plumbing system. Id.

28. Applying the long-standing rationales to the policy at issue herein, one can conclude that a loss caused by termites and/or unseen decay and/or water damage in between the floors (obviously a hidden location) which caused the parts of the building to "fall down or cave in" is covered under the affirmative statement of coverage collapse and the exclusions for "insect infestation" for example, apply to losses other than that which is a collapse resulting from termites. W. Am. Ins. Co. v. Chateau La Mer II Homeowners Ass'n, Inc., 622 So. 2d 1105, 1108 (Fla. 1st DCA 1993).

### At Best (Worst) - The Policy is Ambiguous

29. The Court in Kings Ridge Cmty. Ass'n, Inc. v. Sagamore Ins. Co., 98 So. 3d 74,

79–80 (Fla. 5th DCA 2012) ultimately determined that the policy was ambiguous because the Affirmative provision in the Additional Coverages -Collapse did not clearly intend to include or exclude clauses under "Section B - Exclusions". <u>Kings Ridge</u> provided cites to other jurisdictions with similar holdings:

> In reaching our conclusion that the policy is ambiguous, we find instructive the cases cited by the Association as they are factually similar and involve the same policy language as in the present case. See, e.g., <u>Malbco Holdings, LLC v. AMCO Ins. Co.</u>, 629 F.Supp.2d 1185 (D.Or.2009) (identical policy language involving truss system that failed causing floor and ceiling to settle by three inches); <u>130 Slade Condo. Ass'n, Inc. v. Millers Capital Ins. Co.</u>, No. CIV.A. CCB–07–1779, 2008 WL 2331048 (D.Md. June 02, 2008) (identical policy language involving support column buckling three inches down and three inches to south causing condominium unit's ceiling to separate from the wall); <u>Landmark Realty, Inc. v. Great Am. Ins. Co.</u>, No. CIV. JKS 10–278, 2010 WL 5055805 (D.Md. Dec. 03, 2010) (identical policy language involving a two-story apartment building where ground floor fell anywhere from one inch at one end of building to seventeen and one-half inches on other end as result of failure of wood support structure underneath the floor).

30. Furthermore "ambiguous exclusionary clauses are construed even more strictly against the insurer than coverage clauses." <u>Sebo</u>, 208 So. 3d at 697 citing to <u>Auto–Owners Ins. Co. v. Anderson</u>, 756 So.2d 29, 33 (Fla.2000). When an "all-risk" policy affirmatively includes coverage for "Collapse" and provides in the Exclusions section that an "exclusion" for "collapse" requires consideration of the language provided in "Additional Coverages" provision, the policy language is susceptible to more than one reasonable interpretation, one providing coverage, and the other limiting coverage. Therefore, the policy is ambiguous, and any ambiguity must be interpreted in favor of the insured by adopting the reasonable interpretation of the policy's language that provides coverage as opposed to the reasonable interpretation that would limit coverage. <u>Auto-Owners Ins. Co. v. Anderson</u>, 756 So. 2d 29, 34 (Fla. 2000).

## **CONCLUSION**

31. For all the reasons stated above, Plaintiff, Hollywood Park requests the Court enter an order granting it partial summary judgment as to liability on Counts I & II, and upon Defendant, Chubb Custom Insurance Company's Affirmative Defenses.

Respectfully Submitted,

Adrian Neiman Arkin, Esq.
Mintz Truppman, P.A.
1700 Sans Souci Boulevard
North Miami, FL   33181
305-893-5506 x216 – phone

By:__/s/ Adrian Neiman Arkin
      Adrian Neiman Arkin
      Florida Bar No. 161209
      Adrian@mintztruppman.com

and

      Michael A Citron
      MAC Legal, P.A.
      Twelve Southeast 7th Street Suite 805
      Fort Lauderdale, FL 33301
      Telephone: (786) 565-7963
      Michael@maclegalpa.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY a true and correct copy of was filed with the Clerk of this Court via the CM/ECF filing and that a copy has been sent via electronic mail this 4th day of December, 2017 to: John David Dickenson, jdickenson@cozen.com, Matthew B. Criscuolo, mcriscuolo@cozen.com Cozen O'Connor, One North Clematis Street, Suite 510, West Palm Beach, Florida 33401.

                                        Adrian Neiman Arkin, Esq.
                                        Co-Counsel for Plaintiff
                                        Mintz Truppman, P.A.
                                        1700 Sans Souci Boulevard
                                        North Miami, FL   33181
                                        305-893-5506 x216 – phone

                                        By:__/s/ Adrian Neiman Arkin
                                               Adrian Neiman Arkin
                                               Florida Bar No. 161209
                                               Adrian@mintztruppman.com
and
                                          Michael A Citron
                                          Co-Counsel for Plaintiff
                                          MAC Legal, P.A.
                                          Twelve Southeast 7th Street
                                          Suite 805
                                          Fort Lauderdale, FL 33301
                                          Telephone: (786) 565-7963
                                          Michael@maclegalpa.com